UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

___

JOHN NUNNALLY,

         Plaintiff,         Case No. 2:12-cv-378

v.                                       Honorable Gordon J. Quist

JEFFREY WOODS,

         Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Woods, McLarin, Davis, Laplaunt, Bailey, Dunton, M. Brown, Sergeant Brown, and Watson. The Court will serve the complaint against Defendants Eicher, Anderson, Nichols, Crisp, MacDonald, Unknown J. M., Swift, and Collen Brown.

## Discussion

I. Factual allegations

Plaintiff John Nunnally, a state prisoner currently confined at the Kinross Correctional Facility (KCF), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Warden Jeffrey Woods, Deputy Warden Duncan McLarin, Lori Davis, R.N., Health Unit Manager Laplaunt, Resident Unit Officer Eicher, Corrections Officers Anderson, MacDonald, C. Nichols, H. Crisp, Resident Unit Manager / Hearing Officer Terry Swift, Assistant Resident Unit Manager Collen Brown, Resident Unit Manager R. Bailey, Assistant Resident Unit Manager K. Dunton, Lieutenant / Hearing Officer M. Brown, Lieutenant / Hearing Officer Watson, Sergeant Brown and Mailroom Staff Person "J.M."

Plaintiff alleges that on October 13, 2010, while he was confined at the Chippewa Correctional Facility (URF), he wrote to Warden McQuiggin and indicated that he had not received an institutional rule book. Plaintiff's letter was prompted by the fact that he had received a misconduct ticket for using the restroom prior to count clearing in violation of prison rules, despite the fact that Plaintiff was unaware of the rule. Plaintiff was found guilty of being out of place and received seven days toplock.

On June 2, 2011, Plaintiff again requested a rule book from the Warden. On June 5, 2011, Defendant Eicher stopped Plaintiff and asked him if he had a problem, taking Plaintiff's identification card and writing several false charges on Plaintiff. Plaintiff was found guilty of the misconduct by Defendant M. Brown despite the fact that Plaintiff did not have a rule book and was not given law library time to prepare a defense. The Warden's office denied Plaintiff's appeal. On June 9, 2011, Defendants Eicher and Anderson searched Plaintiff's area and removed his television,

trimmers, typewriter, and calculator. Defendant Eicher told Plaintiff that he had read Plaintiff's letter to the Warden and this was what happened to complainers in the U.P. During this time, Defendant Eicher was scratching on the top and side of the television with a piece of metal. Shortly thereafter, Defendant Anderson told Plaintiff, "You Niggers will learn who really runs this place." Plaintiff filed a grievance on Defendant Anderson, which "came up missing from the unit mailbox." Plaintiff received a class III misconduct for contraband, which asserted that the television and trimmers had been renumbered. Following a hearing by Defendant Collen Brown, the institutional property room was contacted and Plaintiff produced his receipt. Thereafter, Plaintiff's television was returned to him. Plaintiff mailed the damaged television home on November 15, 2011.

On September 8, 2011, Plaintiff was called to health services and was asked to give a DNA sample. Plaintiff refused as he had always done before and was allowed to return to his unit. On September 15, 2011, Defendant Lori Davis asked Plaintiff for a DNA sample and he again refused. Plaintiff was then told that there was a new law that required Plaintiff to give a DNA sample. Plaintiff asserted that because his conviction predated the law, it did not apply to him. Defendant Laplaunt then entered the room and told Plaintiff that he was being taken to see the Warden. Plaintiff was subsequently taken to the East Side facility, and placed in belly chains by officers in riot gear carrying shields. Plaintiff was taken to a segregation room and Defendant McLarin told him that his DNA would be taken and that any resistance would be considered an assault on staff. While Plaintiff was being videotaped, he complied with the extraction of DNA, but refused to sign anything. Plaintiff complained to Defendant Woods and was told to write a grievance. Defendant Davis wrote a class II misconduct on Plaintiff for disobeying a direct order. A hearing was initially begun on September 20, 2011, but was postponed until September 26, 2011. On September 26, 2011, Defendant Swift

conducted the hearing, during which she referred to Plaintiff as "Grievance Guy." Defendant Swift found Plaintiff guilty of disobeying a direct order given by Defendant Davis while at URF West. Plaintiff asserts that three prisoners were found guilty of refusing to provide a DNA sample, and of the three, he received the most severe sanctions. Plaintiff appealed, to no avail.

On November 17, 2011, while he was in serving line for the evening meal, Plaintiff asked that his mustard and napkin be placed on his tray, rather than on the counter, which was unsanitary. Plaintiff stated that Resident Unit Officer Campbell had told him just days before that there was MRSA (Methicillin-resistant Staphylococcus Aureus) in the compound. Defendant Nichols stated that she was not concerned with that and asked for Plaintiff's identification card. Defendant Nichols then wrote a class II misconduct for disobeying a direct order/insolence on Plaintiff, which asserted that Plaintiff had refused to leave the area and was warned that the Sergeant would be called if he did not comply. Defendant Nichols claimed that Plaintiff stated, "I don't need no damn Sergeant, if I get marsa its your fault." During the hearing, Defendant Lieutenant M. Brown found Plaintiff guilty of disobeying a direct order, stating: "A review of the camera does show a pause in the serving line as a discussion occurred. I find the reporting staff member to be credible and find the prisoner guilty of the offense."

On November 27, 2011, Defendant Sergeant Brown supervised unknown officers in the searching of Plaintiff's area while Plaintiff was at chow. When Plaintiff returned to his cell, he discovered that his wall locker was unsecured, his property had been pulled out of the wall locker, and that his footlockers were open in the middle of the floor. Plaintiff later discovered that Defendant Nichols was involved in the search. Plaintiff states that there were items in the hallway in front of the cubicle and that as he attempted to search the area, Defendant Crisp stopped him and called a porter

to discard the items. Plaintiff wrote a letter of complaint to the Deputy of Housing. Plaintiff later discovered that his trial transcripts were missing and was told by the porter that they had been discarded after Defendant Crisp ordered it. Plaintiff states that he had been in the process of filing a motion for relief from judgment.

On January 12, 2012, Defendant Crisp wrote a class II misconduct for unauthorized occupation of a cell or room on Plaintiff. Plaintiff's defense was that he had never received a rule book, but Defendant Lieutenant Watson found Plaintiff guilty, stating that Plaintiff had "been around the MDOC long enough to be well aware that he's not allowed to enter another prisoner's room, cell or clearly defined living area without authorization." During the hearing, Plaintiff stated that Defendant Watson should not be conducting the hearing. Plaintiff received 21 days loss of privileges. On March 6, 2012, Plaintiff wrote to Defendant Woods concerning a missing grievance. Defendant MacDonald subsequently wrote a false class II misconduct on Plaintiff for disobeying a direct order and being out of place. Plaintiff states that the misconduct arose from an incident in chow hall where a prisoner directly in front of Plaintiff had words with Defendant Anderson. As that prisoner continued on, Defendant Anderson said "Stupid Nigger." Plaintiff stared at Defendant Anderson as he proceeded past him. When Defendant Anderson asked what Plaintiff's problem was, he said "racism." Plaintiff proceeded through the chow line. Defendant MacDonald came and took Plaintiff's identification card and later came to Plaintiff's cell and threw his personal property all over the cubicle. On March 26, 2012, Defendant R. Bailey conducted a hearing, refused Plaintiff's request for evidence, and found Plaintiff guilty of the charges. Plaintiff received 14 days loss of privileges.

On November 4, 2011, Plaintiff had mail from the Third Judicial Circuit Court opened outside of his presence despite the fact that he had "special handling" of his legal mail. Plaintiff

complained about the incident and Defendant J. M. responded by stating that Plaintiff did not have legal A status, that Plaintiff must complete a form in order to obtain such status, and that Plaintiff could get the form from his Resident Unit Manager or Assistant Resident Unit Manager. Plaintiff subsequently kited Defendant Assistant Resident Unit Manager Collen Brown for the form, but she stated that Plaintiff had to get it from the mailroom and indicated that she had forwarded his kite to them. On January 13, 2012, Plaintiff received legal mail from the ACLU of Michigan, which was treated as regular mail. Plaintiff filed a grievance and was called out to Defendant Resident Unit Manager Brown's office the next day in order to fill out a form for special handling of his mail.

On April 23, 2012, Plaintiff went to Defendant K. Dunton's housing unit in an attempt to mail out a step III grievance against Defendant Bailey. The mail was more than 2 ounces and Defendant Dunton refused to send it out. Plaintiff claims that he filed a grievance on Defendant Dunton for refusing to mail out his grievance on Defendant Bailey, and that the grievance on Dunton was reviewed by Defendant Bailey. Plaintiff states that this violated his due process rights.

Plaintiff claims that Defendants violated his rights under the First and Fourteenth Amendments. Plaintiff seeks compensatory, punitive and nominal damages, as well as declaratory and injunctive relief.

II.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that the taking of his DNA violated his due process rights. Plaintiff was convicted of first-degree murder in 1985. *See* http://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=181375.

> The Michigan DNA Identification Profiling System Act, Mich. Comp. Laws § 28.171 *et seq.* (Michigan DNA Profiling Act), requires that

such offenders submit to the collection of a deoxyribonucleic acid
(DNA) identification sample before being discharged. *See* Mich.
Comp. Laws § 28.176(1)(a); Mich. Comp. Laws § 791.233d(1). The
MDOC may collect a sample of the prisoner's blood, saliva, or tissue
regardless of whether the prisoner consents to the collection. Mich.
Comp. Laws § 791.233d(3), (6). If a prisoner refuses, he or she is
guilty of a misdemeanor punishable by imprisonment of not more than
one year or a fine, or both. Mich. Comp. Laws § 28.173a(1).

*Erdman v. Granholm*, 2007 WL 757894, *2 (W.D. Mich. 2007).

The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof"l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

In recent cases, the Sixth Circuit has held that the taking of a DNA
sample, a property interest, failed to violate the Due Process Clause.
*See Bean,* 2007 WL 177898, at *3 (holding that the collection of
plaintiff's DNA under the Federal DNA Act did not violate the Due
Process Clause); *Williams v. Dep't of Rehab. & Corr.,* 3 F. App'x 415,
417 (6th Cir.2001) (holding that a prisoner's due process claim failed
because his DNA sample involved nothing more than a *de minimus*
taking under the Ohio DNA collection statute, which provided for
notice and a hearing); *see also Thomas,* 2006 WL 2708267, at *7
(finding that plaintiff's due process challenge failed when Tennessee's
DNA collection statute and the Tennessee Department of Corrections'
policy provided for notice and a hearing).

*Erdman*, 2007 WL 757894, at *6.

The *Erdman* court further stated:

Courts have long recognized that *de minimus* property interests do not
trigger procedural due process protections. *See Goss v. Lopez,* 419 U.S.
565, 575-76, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (holding that ten-day
school suspension triggered procedural due process protection because
it was not *de minimus); Fuentes v. Shevin,* 407 U.S. 67, 90 n. 21, 92
S.Ct. 1983, 32 L.Ed.2d 556 (1972) (acknowledging that some form of
notice and hearing is required before the deprivation of a property
interest that " 'cannot be characterized as *de minimus* ' "); *Carter v. W.
Reserve Psychiatric Habilation Ctr.,* 767 F.2d 270, 272 n. 1 (6th
Cir.1985) (routine disciplinary two-day suspension without pay was *de*

*minimus* and not deserving of due process protection); *Versarge v. Twp. of Clinton N. J.,* 984 F.2d 1359, 1370 (3rd Cir.1993) ("requirements of due process do not apply when the property interest involved is *'de minimus'* "). The level of due process directly coincides with the severity of the deprivation. *Dudley v. Doe,* No. 05-60142, 2006 WL 2457456, at *4 (E.D.Mich. Aug.23, 2006) (citing *Boutchee v. Grossheim,* 11 F.3d 101, 103 (8th Cir.1993)). When the deprivation is *de minimus,* the due process requirements are also *de minimus. Id.*

In *Williams,* 3 F. App'x at 417, the Sixth Circuit held that the taking of a prisoner's DNA sample, pursuant to Ohio's DNA collection statute, was *de minimus* and "not entitled to extensive due process protections." *Williams,* 3 F. App'x at 417 (citing *Dill v. City of Edmond,* 155 F.3d 1193, 1207 (10th Cir.1998) (listing cases)). The Sixth Circuit further reasoned that the prisoner was afforded adequate due process because he was provided with notice and an opportunity to be heard when his DNA sample was taken. *Williams,* 3 F. App'x at 417. In *Thomas,* 2006 WL 2708267, at *7, the district court held that the Tennessee DNA collection statute and a Tennessee Department of Corrections' policy afforded the prisoner adequate procedural protections, *i.e.* notice and an opportunity to be heard, when the prisoner provided his blood sample to prison officials.

The Michigan DNA Profiling Act also provides adequate due process protections for the *de minimus* taking of a prisoner's DNA sample. Under Mich. Comp. Laws § 28.173a(1), an individual required to provide a DNA sample under the Michigan DNA Profiling Act is "guilty of a misdemeanor," punishable by imprisonment of not more than one year or a fine, or both, when he or she refuses to submit to a DNA sample. Mich. Comp. Laws § 28.173a(1). It is well established that any person charged with a crime has a constitutional right to due process. *See* U.S. Const. amend. XIV; Mich. Const. art. 1, § 17. Due process requires that persons whose life, liberty or property interests are at stake be afforded "notice and an opportunity to be heard." *Dusenbery v. United States,* 534 U.S. 161, 167, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002). Although Plaintiff ultimately consented to his DNA sample, he could have refused; thereafter, he would have received due criminal process.

*Id.* at *7. Therefore, for the same reasons given by the court in *Erdman*, the court will dismiss Plaintiff's due process claims against Defendants Woods, McLarin, Davis and Laplaunt regarding the collection of a DNA sample.

Plaintiff claims that Defendants Sergeant Brown, Nichols, and Crisp denied his access to the courts when they deprived him of his trial transcripts. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343, 346, 354 (1996) (citing *Bounds*). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351. Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated

documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In this case, Plaintiff asserts that trial transcripts are an essential part of any criminal appellate review. However, the court notes that Plaintiff's convictions for first-degree murder and felony firearm occurred in 1985. See http://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=181375. Plaintiff's direct appeal to the Michigan Court of Appeals was denied on February 23, 1987. *See People of Michigan v. John Henry Nunnally*, Mich. Ct. App. No. 89631 (http://courts.mi.gov/opinions_orders/case_search/Pages/default.aspx?SearchType=1&CaseNumber=89631&CourtType_CaseNumber=2). In addition, Plaintiff appealed the denial of his motion

for relief from judgment to the Michigan Court of Appeals, which was denied on July 21, 1998. Plaintiff's subsequent appeal to the Michigan Supreme Court was denied on May 25, 1999. *See People of Michigan v. John Henry Nunnally*, Mich. Ct. App. No. 202269 and Mich. S.Ct. No. 113065 (http://courts.mi.gov/opinions_orders/case_search/Pages/default.aspx?SearchType= 1&CaseNumber=202269&CourtType_CaseNumber=2). Therefore, because Plaintiff has already completed any appellate review of his criminal convictions, it does not appear that the loss of his trial transcripts could cause any actual injury as required for an access to courts claim.

Moreover, any due process claim that Plaintiff might be asserting in relation to the loss of his trial transcripts is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. *Id.* at 543–44. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Id.* at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are

available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Nov. 15, 2004). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claims in relation to the loss of his trial transcripts are dismissed.

Plaintiff claims that Defendants Lieutenant M. Brown, Swift, Watson, and Bailey heard misconducts and found Plaintiff guilty in violation of Plaintiff's due process rights. Plaintiff claims that he was not allowed to present evidence at the hearings or to establish a defense. A review of Plaintiff's complaint shows that he was charged with and found guilty of both class II and class III misconducts. A prisoner found guilty of class II and III misconducts is subject to the following sanctions:

> Sanctions for Class II Misconduct
>
> The hearing officer to conduct Class II hearings shall impose one or more of the following sanctions upon a finding of guilt with the maximum reserved for only the most serious or persistent violators:
>
> A. Toplock (confinement to quarters), not to exceed five days for all violations arising from a single incident.

B. Loss of privileges, not to exceed 30 days for all violations arising from a single incident.

C. Assignment of extra duty, not to exceed 40 hours for all violations arising from a single incident.

D. Restitution.

Sanctions for Class III Misconduct

The hearing officer shall impose one or more of the following sanctions upon a finding of guilt, with the maximum reserved for only the most serious or persistent violators:

A. Toplock (confinement to quarters), not to exceed five days for all violations arising from a single incident.

B. Loss of privileges, not to exceed 15 days for all violations arising from a single incident.

C. Assignment of extra duty, not to exceed 20 hours for all violations arising from a single incident.

D. Counseling and reprimand.

MICH. DEP'T OF CORR., Policy Directive 03.03.105, Attachment D.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*,

427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Here, Plaintiff clearly has failed to allege conditions which would constitute an atypical and significant hardship. Therefore, Plaintiff's due process claims against Defendants M. Brown, Swift, Watson, and Bailey regarding his misconduct tickets are properly dismissed.

Plaintiff claims that Defendants Dunton and Bailey interfered with his use of the grievance system in violation of his due process rights. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No.

93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

The court concludes that Plaintiff's claims that Defendants Eicher, Anderson, Nichols, Crisp and MacDonald retaliated against him are non-frivolous, as are his claims that Defendants Unknown J. M., Eicher, Swift, and Collen Brown improperly opened his legal mail in violation of the First Amendment. Therefore, these claims may not be dismissed on initial screening.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Woods, McLarin, Davis, Laplaunt, Bailey, Dunton, M. Brown, and Watson will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Eicher, Anderson, Nichols, Crisp and MacDonald with regard to his retaliation claims, and against Defendants Unknown J. M., Eicher, Swift, and Collen Brown with regard to his claim that they improperly opened his legal mail in violation of the First Amendment.

An Order consistent with this Opinion will be entered.


Dated: June 17, 2013 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE